**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:08CR8**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **TIMOTHY LEROY NIXON,** ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant Timothy Nixon's Motion to Suppress filed on August 5, 2008 (Document #18), the Government's Response filed September 4, 2008 (Document #24), and the Defendant's Amended Reply to Response filed October 3, 2008 (Document #26). The parties appeared before the undersigned for hearing on October 8, 2008, at which time the Court denied Defendant's motion. The purpose of the instant Order is to reduce to writing the Court's legal reasoning in denying the Motion to Suppress.[1]

**FACTS[2]**

The Iredell County Sheriff's Office operated a driver's license checkpoint on July 25, 2007. When Nixon came through, he told the police that he did not have a driver's license, and he appeared nervous. Sergeant Boyd asked Nixon to pull to the side of the road, and Nixon complied. After brief questioning, Nixon told Sgt. Boyd that his license had been revoked, which is an arrestable offense

---

[1]This Order does not in any way alter the Court's oral ruling of October 8, 2008.

[2]These facts are taken with only minor alterations from the Government's Response to Defendant's Motion to Suppress. Defendant's Motion to Suppress contains only a cursory recital of the facts, and nothing alleged by Defendant contradicts the facts as presented by the Government.

1

under North Carolina law. During this time, Sgt. Boyd also noticed that Nixon's state inspection sticker was expired.

Sgt. Boyd asked Nixon to step outside of the car, which Nixon did. Sgt. Boyd told Nixon that he, Boyd, was going to issue Nixon a ticket and that Nixon would have to sit in the squad car while he did so. Before directing Nixon to the car, Sgt. Boyd asked Nixon if he had any contraband on his person, and Nixon, still acting nervous, said "no." Sgt. Boyd then obtained Nixon's consent to search his person. During the course of the search, Sgt. Boyd found a pill bottle that fell out of Nixon's shorts when shaken. It contained four crack rocks. At that point Sgt. Boyd placed Nixon in handcuffs.

Lieutenant Meyer then began to assist Sgt. Boyd. Lt. Meyer asked Nixon if there was any other contraband in the car. Nixon said that there was more crack in the floorboard under the front passenger seat. The officers also found a safe in the trunk, which a canine sniff suggested also contained narcotics. Nixon then claimed the safe as his own and directed the officers to the keys, which were on Nixon's key ring, and said that the officers could open the safe. Inside the safe the police found a .38 revolver, scales, and other drug paraphernalia. Nixon seeks the suppression of all evidence obtained during the course of this stop on the sole ground that the police did not have a warrant to conduct the search.

**ANALYSIS**

In his initial motion, Nixon argued that the search violated his Fourth Amendment rights because it was conducted without a warrant. Beyond this, Nixon made no more specific allegations

about which aspects of the police conduct were unconstitutional.[3] At the outset, Nixon's apparent contention that all searches require a warrant is incorrect. Many exceptions to the warrant requirement are recognized by the Supreme Court, and the touchstone for Fourth Amendment analysis is reasonableness, not the presence or absence of a warrant. *See Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (upholding the constitutionality of a warrantless search of the driver of an automobile based on probable cause); *see also California v. Acevedo*, 500 U.S. 565, 580 (1991) (recognizing the existence of "a few specifically established and well-delineated exceptions" to the warrant requirement); *Acevedo*, 500 U.S. at 582 (Scalia, J., concurring) (cataloguing some of the "nearly 20 such exceptions" to the warrant requirement).

Although Nixon does not challenge the validity of the initial stop, this Court notes as a preliminary matter that the driver's license checkpoint was permissible. Vehicle checkpoints are permissible where all drivers on a certain road are stopped as they pass, or where all cars at specific intervals (e.g., every fifth car) are stopped, so long as the intrusion on the drivers' privacy and time is minimal, the procedure is uniform, and the stop satisfies a purpose other than normal law enforcement. *See City of Indianapolis v. Edmond*, 531 U.S. 32, 37-38 (2000); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 450-55 (1990). Here, all drivers were stopped and asked to produce their licenses before they could proceed on their way. The intrusion was minimal and uniformly imposed. The purpose of the stop was roadway safety, a purpose approved by the Supreme Court as distinct from normal law enforcement. *Edmond*, 531 U.S. at 37-38. Of especial relevance to the present case, the Supreme Court in *Edmond* suggested in dicta that a "roadblock

---

[3]In his Amended Reply to the Government's Response, Nixon does address in more detail some of the Government's arguments as to why the search did not violate the Fourth Amendment despite being conducted without a warrant.

with the purpose of verifying drivers' licenses and vehicle registrations would be permissible." *Id.* at 37-38. Thus, the initial seizure of Nixon at the checkpoint for the purpose of checking his driver's license was reasonable and comports with Supreme Court precedent on the issue.

### 1. The Initial Search of Nixon's Person

Once Nixon admitted that his driver's license was revoked, the police had probable cause to arrest Nixon, and so the threshold requirement of reasonable suspicion of illegal activity was met regarding the subsequent stop of Nixon. As part of a traffic stop, the police may require the occupants of an automobile to exit the vehicle. *Mimms*, 434 U.S. at 109-12. Here, the police did just that.

After Nixon left the vehicle, Sgt. Boyd asked Nixon for permission to search his person, and Nixon consented. "It is ... well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted). Consent is valid even where a person is unaware of his right to refuse, so long as the consent is not the result of coercion. *Id.* at 227-28. In determining whether consent is voluntary, the reviewing court must look at all of the surrounding circumstances. *Id.* at 227.

In the present case, there is no evidence of improper coercion. The police simply asked Nixon if they could search his person, and Nixon consented. At the time of his consent, Nixon was not in police custody. Although the officers had asked Nixon to sit in the police car while they wrote Nixon his ticket, Nixon was still standing outside at the time of the initial search. Because Nixon consented, he is incorrect in asserting that a warrant was required for the search to be reasonable under the Fourth Amendment.

**2. The search of the passenger compartment of Nixon's car**

The subsequent search of Nixon's car was also valid, for two reasons. First, under the "car exception" to the Fourth Amendment's Warrant Clause, "a warrantless search of an automobile, based upon probable cause to believe that the vehicle contain[s] evidence of crime in the light of an exigency arising out of the likely disappearance of the vehicle, d[oes] not contravene the Warrant Clause of the Fourth Amendment." *Acevedo*, 500 U.S. at 569 (citing *Carroll v. United States*, 267 U.S. 132, 158-59 (1925)). In other words, a search of a car may be conducted without a warrant when there is probable cause to believe that evidence of a crime will be found inside. In this case, the police had probable cause to search Nixon's car after finding crack on his person, especially since Nixon had only moments before been inside his automobile and had been carrying the crack with him as he was driving.

Secondly, the search of Nixon's car was constitutionally reasonable because Nixon impliedly consented to the search.[4] Nixon himself directed the police to the drugs under his front passenger seat after the police asked Nixon whether there was any more contraband in his vehicle.

**3. The search of the car's trunk and of the safe found inside**

Finally, the search of Nixon's trunk and the safe found therein was also reasonable and did not require a warrant. "The scope of a warrantless search based on probable cause is no narrower–and no broader–than the scope of a search authorized by a warrant supported by probable cause." *United States v. Ross*, 456 U.S. 798, 823 (1982). This scope "is defined by the object of the

---

[4]Although Nixon may have been in custody at this point and had not received his *Miranda* warnings, consent to search is still valid so long as it is not the result of coercion. U.S. v. Stevens, 487 F.3d 232, 242-43, 243 n.3 (5th Cir. 2007) (adopting this rule and citing to similar decisions from the 7th, 8th, and 10th Circuits). As discussed previously, there is no evidence of coercion in this case.

5

search and the places where there is probable cause to believe that it may be found." *Id.* at 824. Because a "warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search," the same scope applies to a search conducted pursuant to probable cause. *Id.* at 821. Applying these rules in *Ross*, the Supreme Court held that the search of a car's trunk is permissible if the object sought could be hidden there and also held that the search of any container within the car is permissible if it is justified by this same criterion. *See Id.* at 820-23.

In the present case, the police had probable cause to believe that there was contraband in Nixon's car after finding crack cocaine on Nixon's person. Due to its small size, this contraband could have been located anywhere inside the vehicle, including the trunk. Because the police had probable cause to search every part of Nixon's car where crack could be found, the police were constitutionally reasonable in their search of the trunk of the automobile.

For the same reason, the police were reasonable in searching inside the safe for contraband. "The police may search an automobile *and the containers within it* where they have probable cause to believe contraband or evidence is contained." *Acevedo*, 500 U.S. at 580 (emphasis added). The police in this case had probable cause to search the car for crack cocaine, and this allowed the police to search any part of the car and any container within the car that might contain the object sought. Since it is undisputed that crack cocaine could be contained in a safe,[5] the probable cause to believe that Nixon's vehicle was transporting contraband was sufficient to allow a search of this safe. *See Ross,* 456 U.S. at 823 (holding that probable cause to believe car is carrying contraband allows search of entire vehicle and any containers therein).

---

[5]This rule applies equally to all types of containers, regardless of whether the container searched is a paper bag or a locked safe. There is no constitutional distinction between "worthy" and "unworthy" containers. *Ross*, 456 U.S. at 822.

6

Further eroding Nixon's argument that a warrant was required to satisfy the Fourth Amendment of the Constitution is the fact that Nixon gave the officers permission to open the safe once it had been found. Nixon directed the officers to the keys on his key ring that matched the safe and gave the officers permission to use them to open the safe. Thus, Nixon's consent is a separate justification for upholding the reasonableness of the police search of the safe.

### III. CONCLUSION

For all of these reasons, the officers' search of Nixon and of his car was constitutionally reasonable and did not require a warrant. Nixon's consent, as well as the independent presence of the necessary probable cause for a search, is fatal to his claim to the contrary. Therefore, Nixon's Motion to Suppress the evidence in this case is hereby **DENIED**.

Signed: December 18, 2008

Richard L. Voorhees
United States District Judge